# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHIRLEY E. WALKER, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | NO. 11-4917 |
| | : | |
| CENTOCOR ORTHO BIOTECH, INC., | : | |
|     Defendant. | : | |

# M E M O R A N D U M

**STENGEL, J.**                                                                                                                             February 25, 2013

Shirley Walker filed this action under 42 U.S.C. § 1981[1] against her employer, Centocor Ortho Biotech, Inc. (Centocor).[2] She asserts claims for discrimination, retaliation, and hostile work environment. Centocor moved for summary judgment on all claims. For the following reasons, I will grant Centocor's motion.

## I.    BACKGROUND[3]

Centocor employed Walker, who is African American, as a senior district manager in its central region. Doc. No. 17-1 ¶ 1. Walker reported to David Gelfuso, regional business director, from April 2008 to the end of her active employment in September 2010. Id. ¶ 2.

In December 2008, Walker filed an internal complaint, which she supplemented in February 2009, concerning Gelfuso's treatment of her and another African-American employee, Glenn Watson. Id. ¶ 8. Centocor maintains polices that prohibit race

---

[1] Section 1981 provides in relevant part that "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).
[2] Centocor has since been renamed Janssen Biotech, Inc.
[3] Although the parties' respective statements of material facts are extensive, I set forth only those facts necessary to evaluate Centocor's motion. Every fact in this section is undisputed unless otherwise noted.

discrimination in the workplace and makes available to employees various avenues of complaint. Id. ¶ 7.

**A.    Pertinent Allegations in Walker's Internal and Judicial Complaints**

**1.    Allegation Concerning Walker's Accounts**

Walker complained that accounts were "being moved in and out of [her] area" during the first quarter of 2009 and that she didn't know who was responsible for this "activity." Id. ¶ 39. She acknowledged that as of February 2009, Centocor's sales operations department corrected the problem and adjusted her sales ranking from #8 to #3. Id. ¶ 40.[4]

**2.    Allegation Concerning Train Travel**

Walker complained that Gelfuso instructed her in September 2009 to stop traveling by train and to instead travel by car. Id. ¶ 57. Walker testified that she could not say Gelfuso treated her any differently in this regard than others who reported to him. Id. ¶ 59.

**3.    Allegation Concerning Gelfuso's Lack of Support in Walker's Management of Others**

Walker complained that "Gelfuso defended . . . and refused to discipline or refused to investigate [her] allegations" regarding three of her direct reports—Bruce Johnson, Jesse Maroy, and Jimmy Johnson. Id. ¶ 60. All three are African American. Id. ¶ 61.

---

[4] Walker contends that the "moving accounts" issue occurred again in the second and third quarters of 2009 and that Gelfuso was unhelpful in getting it resolved; however, she cites no record evidence in support of this assertion. Doc. No. 21-3 ¶ 40.

### i. Bruce Johnson

Following a field ride on June 8, 2010, Walker filed an internal compliant against B. Johnson, alleging he "utilized intimidating tactics, verbal insults, [and] at times he would not respond at all or was disrespectful when he responded." Id. ¶ 4. Walker testified that although she wanted Gelfuso to credit her allegations against B. Johnson, it was not "unreasonable" for Gelfuso to remain neutral during the investigation. Id. ¶ 64. B. Johnson took a leave of absence following the June 8 field ride. Id. ¶ 5. He returned to work on August 13, 2010, at which time Walker and Gelfuso met with Jessica Lynch, a human resources representative, to discuss the agenda for a transition meeting with B. Johnson. Id. ¶ 66. On September 1, 2010, Walker, Lynch, Gelfuso, and B. Johnson held a conference call to review B. Johnson's transition plan. In an email following the meeting, Lynch labeled the call "productive" and offered her continuing "support and guidance." Id. ¶ 67. After her encounter with Johnson on June 8, Walker was not asked to ride with B. Johnson in the field and had only limited personal contact with him. Id. ¶ 68.

### ii. Jesse Maroy

In a February 23, 2010, email to Gelfuso, Walker asked him not to meet with Maroy about certain "alignment changes." Id. ¶ 69. Although Walker testified that she suspected Gelfuso met with Maroy about performance issues Walker was managing, she could not date or describe the circumstances of any such meetings and her notes reflect none. Id. ¶ 70. Following field rides, managers complete a field coaching report for sales representatives with whom they ride. Walker and Maroy disagreed about a statement

3

Walker made in an April 7, 2010, field coaching report. By memorandum dated September 1, 2010, Walker agreed to remove the comment and thanked Maroy "for agreeing not to submit any information regarding the team's data without [her] permission." Walker testified that there were no later issues with Maroy. Id. ¶ 71. Walker also testified that Maroy copied Gelfuso on emails Maroy sent to Walker and other team members. Walker acknowledged that Gelfuso did not solicit the copies. Id. ¶ 72.

### iii. Jimmy Johnson

Walker rode with J. Johnson on August 18, 2010, and sent him a field coaching report on August 30, 2010. In an August 31, 2010, email to Walker and Gelfuso, J. Johnson requested a conference call to discuss the report because he felt Walker "left out some critical details." Id. ¶ 73. On September 9, 2010, J. Johnson sent Walker and Gelfuso an email with an attached write-up of his concerns about the field coaching report. Thereafter, Walker, J. Johnson, and Gelfuso held a conference call. Walker testified that the conference call resolved the matter, that Gelfuso did not ask her to withdraw the field coaching report, and that there were no later issues with J. Johnson. Id. ¶ 74.

### B. Results of Walker's Complaints and Her Leave of Absence

Anita Tinney, who worked in Centocor's employee relations group, investigated Walker's complaint. Id. ¶ 8. Tinney concluded that Walker's allegations of discrimination were "unsubstantiated." Id. ¶ 12; Doc. No. 17-10.

On September 21, 2010, Walker began a medical leave of absence, which as of this memorandum is apparently ongoing. Doc. No. 17-1 ¶ 3.

## II.	STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

A party moving for summary judgment always bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

Under Rule 56, the Court must draw "all justifiable inferences" in favor of the non-moving party. Anderson, 477 U.S. at 255. The Court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id. at 252. The nonmoving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present clear evidence from which a jury can reasonably find in its favor. Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999).

## III.   DISCUSSION

Walker asserts claims for discrimination, retaliation, and hostile work environment under § 1981. Compl. ¶ 28. Section 1981 claims are analyzed according to Title VII standards. Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009). For the following reasons, Walker's claims fall short.

### A.   **Disparate Treatment**

Absent direct evidence, courts evaluate § 1981 disparate treatment claims pursuant to the McDonnell Douglas burden-shifting scheme. Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999). Accordingly, the burden of production first rests with Walker to establish a prima facie case of discrimination. To do so, Walker must show (1) she is a member of a protected class, (2) she satisfactorily performed the duties required by her position, (3) she suffered an adverse employment action, and (4) either similarly-situated non-members of the protected class were treated more favorably or the adverse job action occurred under circumstances that give rise to an inference of discrimination.

6

Langley v. Merck & Co., Inc., 186 F. App'x 258, 259 (3d Cir. 2006). Centocor disputes prongs three and four. Because I find that Walker did not suffer an adverse employment action, I do not reach the parties' remaining arguments.

Walker points to only one allegedly adverse employment action in opposition to Centocor's motion: she argues that "her compensation was affected by Gelfuso." Doc. No. 21-2 at 9.[5] Specifically, she reasons that because Centocor uses annual performance ratings to determine raises, and because Gelfuso's "subjective evaluation of her performance" makes up 40% of that rating, Gelfuso could have affected the amount of her annual raise. Id.

As an initial matter, Walker's complaint, which she never sought leave to amend, is devoid of any allegation that Gelfuso affected her compensation through her performance rating. Walker may not support her disparate treatment claim with an employment action identified for the first time in opposition to Centocor's motion for summary judgment. E.E.O.C. v. Wyeth Pharm., CIV.A. 03-2967, 2004 WL 503417, at *2-3 (E.D. Pa. Mar. 11, 2004). In any event, the record belies Walker's claim that Gelfuso negatively evaluated her because of her race. It is undisputed that Gelfuso rated Walker's performance higher each year than certain white managers and no lower than Walker's previous manager. Doc. No. 21-3 ¶¶ 87-88. Furthermore, Walker concedes that her salary increased each year under Gelfuso's supervision. Id. ¶ 89. Thus, even

---

[5] Although Walker cited eight allegedly adverse employment actions in her complaint, and although Centocor addressed each of these actions in its motion, Walker pursued none in opposition and instead cited only one previously unidentified action. Any argument that Walker's eight originally cited actions constitute adverse employment actions is therefore waived. See Markert v. PNC Fin. Services Group, Inc., 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant.").

7

accepting Walker's speculative claim that Gelfuso evaluated her in some negative way, in turn causing her to receive a lower-than-expected raise, she did not suffer an adverse employment action. Tucker v. Merck & Co., Inc., 131 F. App'x 852, 857 (3d Cir. 2005) ("[A] negative evaluation that leads to a lower than expected merit wage increase or bonus probably does not constitute an adverse employment action."); Wyeth Pharm., 2004 WL 503417, at *2 n.3. For these reasons, Walker's disparate treatment claim fails.

### B. Hostile Work Environment

Walker fails to even mention her hostile work environment claim in opposition to Centocor's motion. That claim is therefore waived. Markert v. PNC Fin. Services Group, Inc., 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant.").

### C. Retaliation

To maintain a claim for retaliation under § 1981, Walker first must establish a prima facie case by showing that (1) she engaged in protected activity, (2) Centocor took a materially adverse action against her, and (3) there was a causal connection between her participation in the protected activity and the materially adverse action. Estate of Oliva ex rel. McHugh v. New Jersey, 604 F.3d 788, 798 (3d Cir. 2010). Centocor concedes that Walker engaged in protected activity when she filed her internal complaint in December 2008 and her supplement in February 2009; however, it disputes the second and third prongs. Because I find that Centocor did not take a materially adverse action against Walker, I do not reach the parties' arguments regarding causation.

An action is "materially adverse" for the purpose of a retaliation claim if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citations and internal quotation marks omitted). Walker alleges Gelfuso retaliated against her in three materially adverse ways: "questionable account movement in the first quarter of 2009; Gelfuso's instruction . . . that she should use her car to travel [in September 2009]; and Gelfuso's lack of support in her management of Bruce Johnson, Jesse Maroy[,] and Jimmy Johnson [throughout 2010]." Doc. No. 21-2 at 12.

Regarding the questionable account movement in the first quarter of 2009, Walker concedes that "as of [her February 2009 supplement], the problem had been corrected for Q1" and that her sales ranking was adjusted from #8 to #3. Doc. No. 21-3 ¶ 40. Because this action was not adverse to Walker, it cannot support her retaliation claim. Morrison v. Carpenter Tech. Corp., 193 F. App'x 148, 154 (3d Cir. 2006) (affirming grant of summary judgment on plaintiff's retaliation claim where plaintiff did "not identify, much less establish, any harm or injury produced by the" allegedly adverse action).

Regarding Gelfuso's instruction that Walker stop traveling by train, no reasonable employee would have found this action materially adverse. Without citation to the record, Walker attempts to link her arthritis, of which she claims Gelfuso was aware, and Gelfuso's instruction that she travel by car. Specifically, because Walker's arthritis prevented her from "sitting for long periods of time," she claims Gelfuso's instruction was an attempt to "negatively affect[] her health" by forcing her to "pull off to the side of the road and walk around, a dangerous activity in some areas." Doc. No 21-2 at 13.

9

Walker's reasoning is too far a stretch. In any event, the record indicates that Walker preferred to take the train simply because it was more convenient, not for health reasons. Walker Dep. at 56 ("[By taking the train,] I would have the opportunity to finish some field coaching reports and make some phone calls and avoid the traffic, the construction."). Because Gelfuso's instruction was, at the very most, a "petty slight[] or minor annoyance[]," it cannot support Walker's retaliation claim. <u>Burlington N. & Santa Fe Ry. Co.</u>, 548 U.S. at 68.

Finally, regarding Gelfuso's alleged lack of support in Walker's management of Bruce Johnson, Jesse Maroy, and Jimmy Johnson, Walker makes no attempt to flesh this argument out and it finds no support in the record. As to B. Johnson, Walker testified that although she was upset Gelfuso refused to take sides on her June 2010 internal complaint, Gelfuso's position was not unreasonable. The record also indicates that Gelfuso was engaged in B. Johnson's transition back to work. As to Maroy, Walker testified that she asked Gelfuso not to meet with Maroy, and aside from Walker's own speculation, there is no evidence that he did. Finally, as to J. Johnson, Walker testified that he asked to meet with her and Gelfuso to discuss objections to a field coaching report, that the meeting resolved the dispute, and that Gelfuso did not ask Walker to withdraw or amend the report. The record simply does not substantiate Walker's claim that Gelfuso failed to support her management of others. Even if it did, Walker fails to identify any injury or harm resulting from Gelfuso's actions beyond her own subjective

10

feelings of supervisory neglect. Morrison, 193 F. App'x at 154. Her retaliation claim therefore fails.[6]

## IV. CONCLUSION

For the foregoing reasons, Centocor's motion for summary judgment is granted.

An appropriate order follows.

---

[6] Even if these actions were materially adverse, I note that Walker's retaliation claim would still fail because she cannot establish causation. She relies solely on temporal proximity in her response. Doc. No. 21-2 at 13. Since temporal proximity is a poor proxy for causation, temporal proximity alone is sufficient only where it is "unusually suggestive of retaliatory motive." Williams v. Philadelphia Hous. Auth. Police Dept., 380 F.3d 751, 760 (3d Cir. 2004) (citations omitted). Walker engaged in protected activity in December 2008 and February 2009. Gelfuso's instruction that Walker stop traveling by train and his alleged lack of support in Walker's management skills occurred in September 2009 and throughout 2010, respectively, well beyond what the Third Circuit has deemed an "unusually suggestive" time period. Compare Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir.1989) (two days between protected activity and adverse action was unusually suggestive), with Williams, 380 F.3d at 760 (two months between protected activity and adverse action was not unusually suggestive). Although the account movements in the first quarter of 2009 present a closer case, Walker has produced no evidence beyond her own suspicion that Gelfuso, or anyone with knowledge of her protected activity, was responsible for moving her accounts, which is fatal in and of itself. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 505 (3d Cir. 1997).